IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


WILLIAM PROSDCOCIMO,            )
                Petitioner,            )
                                       )
        vs.                            )        Civil Action No. 09-1028
                                       )        Judge Conti
JEFFREY A. BEARD, Ph.D., et al.,       )        Magistrate Judge Mitchell
                Respondents.           )

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        It is recommended that the Amended Petition for Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 filed by Petitioner William Prosdocimo be denied and, because reasonable jurists

could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II.     REPORT

        Petitioner, William Prosdocimo, an inmate in the federal witness protection program,

brings this counseled amended petition for a writ of habeas corpus in accordance with 28 U.S.C.

§ 2254, challenging his conviction on May 22, 1985 at No. CC 198104946 on one charge of

criminal homicide and the sentence of life imprisonment, imposed on December 23, 1985 in the

Court of Common Pleas of Allegheny County, Pennsylvania.  The charge arose out of the June

14, 1979 shooting death of Gary DeStefano.

        For the reasons that follow, part of Claim VIII (counsel's ineffectiveness for failing to call

Frank Faiello and Jerry Alexander), part of Claim XI (counsel's ineffectiveness for failing to

impeach Charles Kellington with prior inconsistent statements), and Claims XII (denied due

process based on testimony of perjurers without adequate instruction to the jury), XIII (all prior

counsel failed to investigate his claims) and XIV (cumulative effect of all errors denied his

rights) are unexhausted and procedurally barred from review. The remaining claims (namely, Claims I, II, III, IV, V, VI, VI, VIII as to John Sacco and Sam Rende, IX, X, and XI as to Gerald Walls) should be considered exhausted and should be denied on the merits. In addition, his request for an evidentiary hearing should be denied.

Procedural History

After a series of proceedings described in the margin, Petitioner was brought to trial in the summer of 1985 before Judge Charles F. Scarlata.[1] Petitioner notes that the trial was originally scheduled to begin on June 3, 1985, but it was advanced by Judge Scarlata over the objection of counsel to May 13, 1985. On that date, jury selection commenced and on May 14, 1985, Petitioner entered a plea of not guilty and proceeded to trial. He was represented by Attorney Barbara Fleisher. On May 22, 1985, the jury found him guilty of second degree murder.

On May 31, 1985, Petitioner, through Attorney Fleisher and Attorney Joseph A. Battist, filed Motion for Judgment of Acquittal or, in the alternative for New Trial. (Answer Ex. 17.) Judge Scarlata denied Petitioner's post-verdict motions on December 13, 1985. See Answer Ex. 2.

On December 23, 1985, Petitioner appeared before Judge Scarlata for sentencing, represented by Fred Fahrenz, Esquire. Judge Scarlata sentenced Petitioner to life imprisonment,

---

[1]     On July 29, 1981, Petitioner had filed a petition for habeas corpus, which was granted by Judge George Ross and the charge of homicide was dismissed on April 19, 1982. (Answer Exs. 2, 3.) However, the Commonwealth appealed and, on August 10, 1984, the Superior Court reversed the order of the Court of Common Pleas, reinstated the criminal information and remanded the case for trial. (Answer Ex. 7.) Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court (Answer Ex. 8), but on November 21, 1984, that court denied the petition. (Answer Ex. 10.) Upon remand, the Commonwealth moved for the recusal of Judge Ross and the case was reassigned to Judge Scarlata.

this term to run consecutive to another life sentence he was then serving.[2]

On January 21, 1986, Petitioner, through Attorney Fleisher, filed a Notice of Appeal. (Answer Ex. 19.)  On February 4, 1987, Judge Scarlata filed his Opinion. (Answer Ex. 20.)

On May 6, 1987, Petitioner filed a pro se Brief for Appellant in the Superior Court of Pennsylvania, which was docketed at No. 113 Pittsburgh 1986. (Answer Ex. 21.)  On appeal, Petitioner raised the following claims:

> I. Whether trial counsel was ineffective by failing to preserve the claim of, the trial court erred by denying defendant's motion for continuance, by failing to brief said claim in post-verdict motions.
>
> II. Whether trial counsel was ineffective for failing to preserve the claim of, the trial court denied appellant the right to obtain civilian clothing for trial, by failing to brief said claim in post-verdict motions.
>
> III. Whether trial counsel was grossly ineffective for refusing to allow appellant to take the witness stand in his own behalf.
>
> IV. Whether trial counsel was ineffective by failing to file a post-verdict brief on the claim of, the charge of felony-murder cannot be sustained for the reason the underlying crime was a theft rather than a robbery.
>
> V. Whether trial counsel was ineffective by failing to file a post-verdict brief on the claim of the Commonwealth advancing two opposing theories to preserve said claim for appellate review.
>
> VI. Whether trial counsel was ineffective for failing to file a post-verdict brief on the issue of, the trial court abused its discretion by admitting testimony concerning appellant's alleged involvement with drugs.
>
> VII. Whether trial counsel was ineffective by failing to file a post-verdict brief on the claim of, the trial court misled the jury concerning the definition of

---

[2]    Specifically, the sentence was to run consecutive to the life sentence imposed on November 7, 1983 at CC198104540 in the Court of Common Pleas of Allegheny County, arising out of the September 25, 1979 shooting death of Thomas Sacco.  With respect to that conviction, Petitioner currently has a pending habeas corpus case docketed at Civil Action No. 08-1500.  In addition, he also has a thirty-year sentence for a homicide in Florida.

robbery to include theft.

(Answer Ex. 21 at 3.)

On January 19, 1988, the Superior Court reversed the judgment of the Court of Common Pleas of Allegheny County. (Answer Ex. 23.) The court addressed only the challenge to the sufficiency of the evidence and the argument concerning the jury instruction. The court rejected the sufficiency of the evidence claim, but it "agree[d] with [Prosdocimo's] contention that he was unduly prejudiced by the trial court's improper jury instruction on the charge of felony-murder." (Answer Ex. 23 at 1.) Consequently, the Superior Court reversed the judgment of sentence and ordered a new trial. Judge Hester filed a dissenting opinion.

On February 18, 1988, the Commonwealth filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania, which was docketed at No. 98 W.D. Allocatur Docket, 1988. (Answer Ex. 24.) On or about March 18, 1988, Petitioner filed a pro se Respondent's Reply Brief to Petition for Allowance of Appeal. (Answer Ex. 25.) On March 9, 1989, the Supreme Court granted the Commonwealth's Petition for Allowance of Appeal. (Answer Ex. 26.)

Petitioner filed motions in the Court of Common Pleas and the Supreme Court requesting that counsel be appointed to represent him during this phase of the appeal. The Honorable Robert E. Dauer of the Court of Common Pleas appointed Vincent Baginski, Esquire, to represent him.

On June 5, 1989, the Commonwealth filed a Brief for Appellant in the Supreme Court of Pennsylvania, which was docketed at No. 24 W.D. Appeal Docket 1989. (Answer Ex. 27.) On appeal, the Commonwealth raised the following claims:

I. Did the majority of the Superior Court panel evade the proper scope of

appellate review of the jury charge, and find reversible error in an "isolated excerpt" of the trial court's charge on the underlying felony robbery in this felony-murder prosecution?

II. In reviewing the import of the charge to determine whether appellee was prejudiced by the instructions, did the majority fail to conduct its review pursuant to this Court's mandate that the charge be examined in the context of the entire record?

(Answer Ex. 27 at 3.)

On July 6, 1989, Petitioner, through Attorney Baginski, filed a Brief for Appellee. (Answer Ex. 28.) On July 12, 1989, Petitioner filed a pro se Appellee's Supplemental Reply Brief. (Answer Ex. 29.) On August 17, 1990 the Supreme Court reversed the Superior Court's order, the judgment of sentence was reinstated and the case was remanded to the Superior Court to consider the remaining issues that were not addressed. (Answer Ex. 30.) The opinion was published as Commonwealth v. Prosdocimo, 578 A.2d 1273 (Pa. 1990).

On March 14, 1991 the Superior Court of Pennsylvania affirmed the judgment of the Court of Common Pleas of Allegheny County and addressed the five remaining issues, which had not been previously addressed, on the merits. (Answer Ex. 31.) Petitioner did not file a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania.

On April 6, 1993, Petitioner filed a pro se petition under the Pennsylvania Post Conviction Relief Act, 42 Pa. C.S. §§ 9541-46 (PCRA). (Answer Ex. 32.) Attorney Baginski later withdrew as counsel. Christopher A. Patarini, Esquire, accepted the case and also requested time to file an amended PCRA petition. On May 5, 1997, Petitioner, through Attorney Patarini, filed an Amended Post Conviction Relief Act Petition and Appendices to Amended Post Conviction Relief Act Petition. (Answer Exs. 33, 34.) In his amended petition, Petitioner raised

the following claims:

> A. Mr. Prosdocimo's allegations of error have not been previously litigated or waived, and if waived, the errors resulted in the conviction and affirmance of the sentence of an innocent individual, and affected the substantial rights resulting in a miscarriage of justice.
> B. Mr. Prosdocimo did not knowingly, intelligently or voluntarily waive his right to counsel in his direct appeal proceedings.
>
> C. Mr. Prosdocimo did not knowingly, intelligently or voluntarily waive his right to testify insofar as trial counsel was ineffective for interfering with this right by her failure to prepare Mr. Prosdocimo to testify on his own behalf, and her refusal to allow him to testify.
>
> D. Trial counsel was ineffective for failing to make a sufficient offer of proof in support of the motion for continuance by presenting evidence to establish that she required additional time to investigate and interview known and available witnesses, who were willing to testify on behalf of Mr. Prosdocimo, and who would have benefited the defense.
>
> E. Trial counsel was ineffective for failing to impeach key prosecution witness Charles Kellington with his prior statements which supported the defense theory that the alleged shooter, Robert Bricker and/or Kellington, and/or a third party or parties, who did not include Mr. Prosdocimo, independently planned and conducted the shooting.
>
> F. A new trial based on the claims raised herein should be granted in the "interests of justice."

(Answer Ex. 33 at 5, 15, 18, 24, 32, 35.)

On December 9, 1997, the Commonwealth filed an Answer to Post Conviction Relief Act Petition. (Answer Ex. 35.) On April 9, 1998, Petitioner, through Attorney Patarini, filed a Response to Commonwealth's Answer to Post-Conviction Relief Act Petition and a Supplemental Appendix to Amended Post-Conviction Relief Act Petition. (Answer Exs. 36, 37.)

On May 26, 1998, Petitioner appeared before the Honorable Kathleen A. Durkin for an evidentiary hearing, represented by Attorney Patarini. On June 4, 1998, the Commonwealth filed

a Supplemental Answer to Post-Conviction Relief, wherein it conceded that Petitioner was not aware that by representing himself on appeal, he would be procedurally barred from raising post-conviction claims. (Answer Ex. 38.) On July 2, 1998, Judge Durkin filed Findings of Fact and Conclusions of Law and Order of Court, which held that Petitioner was denied his right to counsel on direct appeal. (Answer Ex. 39.)

On October 5, 1998, Petitioner, through Attorney Patarini, filed a Supplemental Post-Conviction Relief Act Petition. (Answer Ex. 40.) In his petition, Petitioner raised the following claims:

I. Mr. Prosdocimo did not knowingly, intelligently, or voluntarily waive his right to testify insofar as trial counsel was ineffective for interfering with this right by her failure to prepare Mr. Prosdocimo to testify on his own behalf, and her refusal to allow him to testify, and counsel was ineffective for not raising this issue in post-trial motions, and for not preserving it for review.

II. Trial counsel was ineffective for failing to investigate, interview, and subpoena known and available witnesses, who were willing to testify on behalf of Mr. Prosdocimo, and who would have benefited the defense, and for failing to make a sufficient offer of proof in support of the motion for continuance by presenting evidence to establish that a continuance was necessary to protect Mr. Prosdocimo's constitutional right to defend against the charge by giving him an adequate opportunity to call witnesses, and counsel was ineffective for not raising this issue in post-trial motions, and for not preserving it for review.

III. Trial counsel was ineffective for failing to impeach key prosecution witness Charles Kellington with his prior statements which supported the defense theory that the alleged shooter, Robert Bricker, and/or Kellington, and/or a third party or parties, who did not include Mr. Prosdocimo, independently planned and conducted the shooting for personal reasons, and counsel was ineffective for not raising this issue in post-trial motions, and for not preserving it for review.

IV. The court erred in not granting a mistrial when Commonwealth witness Gerald Walls implicated Mr. Prosdocimo in other murders, in allowing testimony that the Commonwealth's witness Gerald Walls was in the Witness Protection Program, and in allowing Walls to testify as to the nature of the illegal drug business in general, insofar as this evidence was not relevant for the reasons

presented by the prosecutor or for any other reason, and it was highly prejudicial insofar as it blackened Mr. Prosdocimo's character, stripped him of the presumption of innocence and predisposed the jury to find him guilty, and counsel was ineffective for objecting to cautionary instructions which did not cure the prejudice.

V. The trial court erred in denying the motion for mistrial when Commonwealth witness Gerald Wells testified that pursuant to his plea agreement, he was required to "give complete and truthful information concerning all of the criminal knowledge that I have … and to come forward and to testify and to take a polygraph test," and thereby improperly bolstered his credibility, which affected the jury's ability to properly weigh his testimony, and counsel was ineffective for not raising this issue in post-trial motions and preserving it for review.

VI. Counsel was ineffective for failing to request that the court charge the jury that "in order to establish an accomplice's liability for Second Degree Murder, the common design, in other words, the shared intent to commit the underlying felony must exist <u>when the act of killing occurs</u>," and that "an act of the defendant's accomplice that kills is not in furtherance of the felony, if the defendant's accomplice commits that felony for his personal reasons which are independent of the felony," and counsel was ineffective for not objecting to the inadequate charge and for not including this issue in post-trial motions, and for not preserving it for review.

VII. Counsel was ineffective for failing to request that the court charge the jury that it "should examine closely and carefully and receive with caution the testimony of Anthony Faiello if you find that he admitted that he committed perjury at another trial," and counsel was ineffective for not objecting to the inadequate charge and for not including this issue in post-trial motions, and for not preserving it for review.

VIII. Counsel was ineffective for failing to object to, request a corrected charge, raise in post-trial motions, and preserve for review a challenge to the court's erroneous instruction that: "You may find the Defendant guilty of second degree murder if you are satisfied that the following elements have been proven beyond a reasonable doubt: … and finally, the killing was done with malice on the part of the Defendant <u>and/or his accomplice</u>." This instruction is an incorrect statement of the law insofar as the Commonwealth must prove the <u>Defendant</u> was acting with malice.

IX. The court abused its discretion in giving pervasively erroneous and misleading instructions, which effectively relieved the Commonwealth of its

burden of proving beyond a reasonable doubt that Mr. Prosdocimo shared a criminal intent to inflict or threaten or inflict serious bodily harm to establish he was an accomplice in the robbery, and allowed the jury to find him guilty of Second Degree Murder if it found beyond a reasonable doubt that he was an accomplice to either a robbery or a theft; and trial counsel and counsel who represented Mr. Prosdocimo in the Pennsylvania Supreme Court were ineffective for failing to claim either at trial or on appeal that the erroneous instruction violated federal constitutional standards.

    X. Trial counsel was ineffective for failing to object and move for a mistrial based on the prosecutor's improper and prejudicial comments in his closing argument, and counsel was ineffective for not raising this issue in post-trial motions and for not preserving it for review.

(Answer Ex. 40 at 2, 3, 5, 8, 13-14, 16-17, 24-25, 28, 34, 40.)

On December 20, 1999, Petitioner appeared before Judge Durkin for an evidentiary hearing, represented by Attorney Patarini. At the conclusion of the hearing, Judge Durkin requested that Petitioner and the Commonwealth file post-hearing briefs.

On March 14, 2000, Petitioner, through Attorney Patarini, filed a Brief In Support Of Post-Conviction Relief Act Petition. (Answer Ex. 43.) In the brief, Petitioner reiterated the claims raised in the Supplemental Post Conviction Relief Act Petition and added the following claim:

    I. Mr. Prosdocimo has consistently maintained his innocence in the shooting of DeStephano, and his testimony in federal court as a witness for the United States while his appeal from the instant conviction was pending in the state court, does not conclusively establish to the contrary, nor does it bar him from obtaining relief based on his claims of ineffectiveness of counsel at this stage of the proceedings.

(Answer Ex. 43 at 3.)

On July 13, 2000, Petitioner appeared before Judge Durkin for an evidentiary hearing, represented by Attorney Patarini. Following an oral argument, the case was taken under

advisement.

On August 18, 2005, Petitioner, through Attorney Patarini, filed a Motion to Rule on Post-Conviction Relief Act Petition. (Answer Ex. 45.) On September 13, 2005, Judge Durkin dismissed the petition on the ground that all the claims were meritless. (Answer Ex. 46.)

On October 13, 2005, Petitioner, through Attorney Patarini, filed a Notice of Appeal to the Superior Court. (Answer Ex. 47.) On November 22, 2005, Judge Durkin filed her Opinion. (Answer Ex. 49.)

On May 11, 2006, Petitioner, through Attorney Patarini, filed a Brief for Appellant in the Superior Court of Pennsylvania, which was docketed at No. 1811 WDA 2005. (Answer Ex. 51.) On appeal, Petitioner raised the following claims:

I. Is Mr. Prosdocimo eligible to obtain relief under the Post Conviction Relief Act?

II. Did Mr. Prosdocimo knowingly, intelligently, or voluntarily waive his right to testify; and was counsel ineffective for not preserving this issue for appeal?

III. Was trial counsel ineffective for failing to call witnesses who would have benefited the defense; and for not making a sufficient offer of proof to support the motion for continuance; was counsel ineffective for not preserving this issue for appeal?

IV. Was counsel ineffective for not impeaching prosecution witness Charles Kellington with his prior statements to support the theory that the alleged shooter, Robert Bricker, and/or Kellington, and/or a third party, who did not include Mr. Prosdocimo, independently planned and conducted the shooting for personal reasons; and was counsel ineffective for not preserving this issue for appeal?

V. Did the court err in not granting a mistrial when Commonwealth witness Gerald Walls implicated Mr. Prosdocimo in other murders, and in allowing testimony that Walls was in the Witness Protection Program, insofar as this evidence was irrelevant, and was highly prejudicial; and was counsel

ineffective for not objecting to cautionary instructions failing to cure the prejudice?

VI. Was counsel ineffective for failing to object and move for a mistrial based on the prosecutor's improper and prejudicial comments in his closing argument; and was counsel ineffective for not preserving this issue for appellate review?

VII. Was counsel ineffective for failing to request a jury charge that the shared intent to commit the underlying felony for 2nd Degree Murder must exist when the act of killing occurs, and that an act of an accomplice that kills is not in furtherance of the felony, if the accomplice commits that felony for his own personal reasons which are independent of the felony; and was counsel ineffective for not preserving this issue for appeal?

VIII. Was counsel ineffective for failing to object to, and preserve for appeal a challenge to the court's erroneous instruction that: "You may find the Defendant guilty of second degree murder if you are satisfied that…the killing was done with malice on the part of the Defendant and/or *his accomplice*"?

IX. Did the court err in giving erroneous and misleading instructions; and was counsel ineffective for not claiming either at trial or on appeal that the erroneous instruction violated federal constitutional standards?

(Answer Ex. 51 at 4.)

On August 4, 2006, the Commonwealth filed a Brief for Appellee. (Answer Ex. 52.) On August 21, 2006, Petitioner, through Attorney Patarini, filed a Reply Brief for Appellant. (Answer Ex. 53.) On August 22, 2007, the Superior Court affirmed the judgment of the Court of Common Pleas of Allegheny County. (Answer Ex. 54.)

On September 20, 2007, Petitioner, through Attorney Patarini, filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania, which was docketed at No. 415 WAL 2007. (Answer Ex. 56.) In his petition, Petitioner raised the following claims:

I. Did Mr. Prosdocimo knowingly, intelligently, or voluntarily waive his right to testify; and was counsel ineffective for not preserving this issue for appeal?

A. In cases preceding *Commonwealth v. Grant*, where neither the trial court nor the Superior Court had a complete record upon which to rule on the merits of a claim of ineffectiveness, but instead of remanding the case for an evidentiary hearing, merely affirmed the judgment of sentence, and where subsequent PCRA hearing on the claim is held during which evidence is presented proving the claim, does due process preclude the court from dismissing the claim on the grounds that it was "previously litigated?"

B. Did the evidentiary hearing establish that trial counsel was ineffective in interfering with Mr. Prosdocimo's right to testify?

II. Where the lower court rules that a defendant was denied his right to counsel on direct appeal, and where the appellate court affirmed the judgment of sentence upon consideration of the defendant's uncounseled brief raising counsel's ineffectiveness for not challenging flawed jury instructions, does the "law of the case" doctrine bar the defendant from subsequently presenting fully and properly developed claims in counseled PCRA proceedings?

A. Was counsel ineffective for failing to request a jury charge that the shared intent to commit the underlying felony for 2nd Degree Murder must exist when the act of killing occurs, and that an act of an accomplice that kills is not in furtherance of the felony, if the accomplice commits that felony for his own personal reasons which are independent of the felony; and was counsel ineffective for not preserving this issue for appeal?

B. Was counsel ineffective for failing to object to, and preserve for appeal a challenge to the court's erroneous instruction that: "You may find the Defendant guilty of second degree murder if you are satisfied that…the killing was done with malice on the part of the Defendant and/or *his accomplice*"?

C. Did the court err in giving erroneous and misleading instructions; and was counsel ineffective for not claiming either at trial or on appeal that the erroneous instruction violated federal constitutional standards?

(Answer Ex. 56 at 4.) On August 5, 2008, the Supreme Court denied the petition.

(Answer Ex. 57.)

On August 5, 2009, Petitioner filed a pro se Petition for Writ of Habeas Corpus in this

Court, which was docketed at Civil Action No. 09-1028. On August 21, 2009, Tracy L. Ulstad, Esquire of the Federal Community Defender Office for the Eastern District of Pennsylvania entered her appearance on behalf of Petitioner. On October 6, 2009 Attorney Ulstad filed a Motion for Stay and Abeyance of Federal Proceedings, which was granted on October 8, 2009.

On September 21, 2009, Petitioner, through Attorney Ulstad, filed a second PCRA petition in the Court of Common Pleas of Allegheny County. (Answer Exs. 58, 59.) In his petition, Petitioner claimed that the Commonwealth withheld materially exculpatory evidence in relation to Anthony Faiello, a Commonwealth witness. Specifically, Petitioner asserted that the Commonwealth withheld the "fact" that the Commonwealth would not prosecute Faiello for the arson of Susan Holzshu's home if he would testify against Petitioner.

On May 24, 2010, Petitioner appeared before Judge Anthony Mariani for an evidentiary hearing on his petition, represented by Attorney Ulstad. At the conclusion of Petitioner's case, the Commonwealth made a motion to dismiss the petition, which was granted. (Answer Ex. 63.)

On July 7, 2010, Attorney Ulstad filed a Motion to Reopen Federal Proceedings, which was granted by Judge Conti that same day.

<u>Claims in Federal Habeas Petition</u>

On September 7, 2010, Petitioner, through Attorney Ulstad, filed an Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and Consolidated Memorandum of Law (ECF No. 15). He raises the following claims:

> I. MR. PROSDOCIMO WAS DENIED DUE PROCESS BECAUSE THE EVIDENCE WAS INSUFFICIENT TO PROVE EVERY ELEMENT OF THE CHARGED OFFENSE BEYOND A REASONABLE DOUBT.
>
> II. MR. PROSDOCIMO WAS DENIED DUE PROCESS BECAUSE THE

13

TRIAL COURT'S JURY INSTRUCTIONS ON FELONY MURDER AND ROBBERY WERE MISLEADING, CONFUSING AND INACCURATE, THEREBY RELIEVING THE COMMONWEALTH OF ITS BURDEN OF PROVING EVERY ELEMENT OF THE CHARGED OFFENSE BEYOND A REASONABLE DOUBT.

III. MR. PROSDOCIMO WAS DENIED DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THE TRIAL COURT'S JURY INSTRUCTION ON MALICE RELIEVED THE COMMONWEALTH OF ITS BURDEN TO PROVE THE ELEMENTS OF FELONY MURDER BEYOND A REASONABLE DOUBT, AND COUNSEL FAILED TO OBJECT TO THE TRIAL COURT'S INSTRUCTION.

IV. MR. PROSDOCIMO WAS DENIED DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THE JURY WAS NOT INSTRUCTED THAT MR. PROSDOCIMO COULD NOT BE CONVICTED OF FELONY MURDER IF THE MURDER WAS COMMITTED FOR PERSONAL REASONS INDEPENDENT OF THE UNDERLYING FELONY, AND COUNSEL DID NOT REQUEST A PROPER INSTRUCTION.

V. MR. PROSDOCIMO WAS DENIED DUE PROCESS BECAUSE IN TWO DIFFERENT TRIALS THE COMMONWEALTH PRESENTED CONTRADICTORY THEORIES OF LIABILITY FOR THE DESTEFANO HOMICIDE.

VI. MR. PROSDOCIMO WAS DENIED DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADVANCED THE TRIAL DATE AND DENIED TRIAL COUNSEL'S MOTION FOR A CONTINUANCE, AND TRIAL COUNSEL FAILED TO ADEQUATELY EXPLAIN TO THE TRIAL COURT THE GROUNDS FOR REQUESTING A CONTINUANCE.

VII. MR. PROSDOCIMO WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO OBJECT TO PREJUDICIAL CLOSING ARGUMENT BY THE PROSECUTION.

VIII. MR. PROSDOCIMO WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO INVESTIGATE AND INTERVIEW IMPORTANT WITNESSES AND PRESENT THOSE WITNESSES AT TRIAL.

IX. MR. PROSDOCIMO WAS DENIED DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THE TRIAL COURT

AND TRIAL COUNSEL DENIED HIM THE OPPORTUNITY TO TESTIFY AND FAILED TO ENSURE THAT ANY ALLEGED WAIVER WAS VOLUNTARY, KNOWING, AND INTELLIGENT.

X. MR. PROSDOCIMO WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO CONFRONT KEY COMMONWEALTH WITNESSES WITH THEIR PRIOR INCONSISTENT STATEMENTS.

XI. MR. PROSDOCIMO WAS DENIED DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THE TRIAL COURT IMPROPERLY ALLOWED WITNESSES TO IMPLICATE MR. PROSDOCIMO IN OTHER CRIMES WITHOUT PROPER OBJECTION BY TRIAL COUNSEL.

XII. MR. PROSDOCIMO WAS DENIED DUE PROCESS BECAUSE HE WAS CONVICTED BASED IN PART ON THE TESTIMONY OF ADMITTED PERJURERS WITHOUT AN ADEQUATE INSTRUCTION TO THE JURY.

XIII. ALL PRIOR COUNSEL WERE INEFFECTIVE FOR FAILING TO INVESTIGATE AND LITIGATE THE ISSUES PRESENTED IN THIS AMENDED PETITION.

XIV. THE CUMULATIVE EFFECT OF ALL THESE ERRORS DENIED MR. PROSDOCIMO HIS CONSTITUTIONAL RIGHTS.

(ECF No. 15 at i-iv.)[3]

Respondents filed an answer on September 21, 2010, in which they argue that ten of the claims are unexhausted because they were either not presented at all or were presented as state law issues and therefore they are procedurally barred from review. In the alternative they contend that these claims should be denied on the merits, as should all of the other claims. (ECF No. 16.) Petitioner filed a reply brief in support of the petition on October 20, 2010 (ECF No. 27).

---

[3] Although Petitioner indicates that he "incorporates the contents of his *Pro Se* Habeas Petition in this Amended Petition" (ECF No. 15 at 4 n.2), both Petitioner and Respondents follow the fourteen issues as described in the Amended Petition in their briefs.

Exhaustion

The first issue that must be addressed by a federal district court when considering a habeas corpus petition filed by a state prisoner is whether the prisoner has exhausted available state court remedies as required by 28 U.S.C. §§ 2254(b) and (c). The Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), provides that:

> (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b).

It is well settled that, as a matter of comity, the state should be provided with the first opportunity to consider the claims of constitutional violations and to correct any errors committed in its courts. Rose v. Lundy, 455 U.S. 509, 518 (1981); Preiser v. Rodriguez, 411 U.S. 475 (1973). Accordingly, before a state prisoner's claims may be addressed by a federal habeas court, the constitutional issues must first have "been fairly presented to the state courts" for review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (quoting Picard v. Connor, 404 U.S.

270, 275 (1971)).  Both the factual and legal basis for the claim must have been presented to the state courts.  Thus, the Supreme Court held that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."  Duncan v. Henry, 513 U.S. 364, 366 (1995).

Procedural Default

The Court of Appeals has stated that:

> As a matter of comity and federalism, a federal court cannot rule on the merits of a habeas petitioner's claims when a state court has found such claims to be procedurally defaulted pursuant to an independent and adequate state procedural rule unless the petitioner shows cause and prejudice for the default.

Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2008) (citing Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996)).  In addition, when habeas petitioners have not fairly presented their claims to the state courts and would be barred by a state procedural rule from seeking further relief, the claims cannot be reviewed because of this procedural default.  Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)).  In Lines, the petitioner had filed a direct appeal to the Superior Court and a petition for allowance of appeal in the Pennsylvania Supreme Court.  He then filed a PCRA petition and after it was denied, he appealed to the Pennsylvania Superior and Supreme Courts.  However, the Court of Appeals concluded that he had not "fairly presented" to the Pennsylvania courts any of the claims that he was presenting in his habeas corpus petition.

The Court of Appeals did not affirm the district court's dismissal of the federal habeas corpus petition on the ground that Lines had failed to exhaust available state court remedies and

that he should file another PCRA petition. Rather, the court concluded that he had no more available state court remedies because the statute of limitations under the PCRA, 42 Pa. C.S. § 9545(b)(1), would prohibit him from filing any PCRA petition, including a second or subsequent petition, more than one year after the judgment becomes final unless certain exceptions are met, which did not apply to the case. The court noted that the Pennsylvania Supreme Court had held in Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999), that the time restrictions under the PCRA are jurisdictional. Id. at 164 & n.17. The court concluded that "[w]hen exhaustion is futile because state relief is procedurally barred, federal courts may only reach the merits if the petitioner makes the standard showing of 'cause and prejudice' or establishes a fundamental miscarriage of justice." Id. at 166 (citation omitted). Because the petitioner failed to meet either exception to the procedural bar, all of his claims were procedurally barred from review and the court dismissed the petition with prejudice. Id. at 169.

Respondents argue that Claim VIII was never raised in any form with respect to Frank Faiello or Jerry Alexander, that Claim XI was never raised in any form with respect to Charles Kellington, that Claim XII was not pursued beyond the PCRA stage and that Claims XIII and XIV were not raised in state court at all. Petitioner admits that he did not raise Claim XI with respect to Kellington (ECF No. 27 at 19), and he has not responded to Respondents' point about Claims XII, XIII and XIV. With respect to Claim VIII, Petitioner states that the "Superior Court's opinion did not address trial counsel's failure to secure the presence of Frank Faiello or Alexander." (ECF No. 15 at 64.) However, the Superior Court stated that it was Petitioner who limited his claim to counsel's failure to call Sam Rende and John Sacco (Answer Ex. 54 at 17) and indeed his brief on appeal refers only to these two witnesses, not Faiello and Alexander

18

(Answer Ex. 51 at 28-29). Thus, these claims are unexhausted and procedurally barred from review.

With respect to Claims I, V, VI, VII, VIII (as to John Sacco and Sam Rende), X, and XI (with respect to Gerald Walls), Respondents acknowledge that Petitioner appears to have raised similar claims either on direct appeal or in his PCRA petition and on appeal therefrom, but they contend that these Petitioner's claims were presented to the state courts as state law issues. However, he contends that: he was denied due process because the evidence was insufficient to prove the elements of the crime beyond a reasonable doubt (Claim I), that he was denied due process when the trial court advanced the trial date and counsel was ineffective for failing to adequately explain the grounds for requesting a continuance (Claim VI), that counsel was ineffective for failing to object to prejudicial closing arguments (Claim VII), that counsel was ineffective for failing to call Sacco and Rende (Claim VIII), that counsel was ineffective for failing to impeach Kellington with his prior statements (Claim X), and that he was denied due process and that counsel was ineffective for allowing Walls to implicate him in other crimes (Claim XI).

The Court of Appeals for the Third Circuit has stated that "the test for insufficiency of the evidence is the same under both Pennsylvania and federal law." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1232 (3d Cir. 1992) (footnote omitted). The court has further held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to the Supreme Court case setting forth the elements of an ineffective assistance of counsel claim, Strickland v. Washington, 466 U.S. 668 (1984). Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). And Petitioner correctly notes that he raised Claims V and VI as due process

claims in the state courts.  See Answer Ex. 21 at 30 (presenting different juries with different theories of the case violated his constitutional right to due process); Answer Ex. 21 at 9 (denial of his request for a continuance denied him due process).  Thus, all Claims I, II, III, IV, V, VI, VII, VIII (as to Sacco and Rende), IX, X, and XI (as to Walls) have been exhausted and should be reviewed on the merits.

Facts of the Case

The Pennsylvania Supreme Court summarized the facts of the case as follows:

> Prosdocimo was one of several people tried for participation in the murder of Gary DeStefano on June 14, 1979.  Prosdocimo and the victim, along with a number of other people, were engaged in transporting illegal drugs from Florida and selling them in Western Pennsylvania.  Prosdocimo and others conceived a plan whereby they would steal drugs brought into Pennsylvania by Gerald Walls and DeStefano; during the execution of the plan, DeStefano was shot in the face and killed by co-conspirator Robert Bricker.  On May 22, 1985, Prosdocimo was convicted by a jury of second-degree murder, and was eventually sentenced to life imprisonment.

(Answer Ex. 30 at 2.)  More specifically, and importantly for purposes of this petition, Petitioner contends that the evidence at trial established that there were two "plans."  The Superior Court noted that the first plan, as testified to by co-conspirator Charles Kellington:

> indicated that [Petitioner], Bricker, and Kellington planned to "rip-off" drugs from Walls approximately two months prior to the shooting and that they all agreed that a "stick-up" of Walls would be necessary to effectuate their plan.  Kellington also testified that, a week prior to the murder, [Petitioner] asked to borrow his vehicle to search for a burial plot for Walls in case the plan went awry.

(Answer Ex. 54 at 2.)

However, Gerald "Snooky" Walls refused to accompany Kellington to Petitioner's house, where the robbery would have taken place.  Therefore, a second plan was devised.  According to the Superior Court, this plan:

called for Robert Bricker to steal the drugs from the trunk of Snooky Walls' car, while Charles Kellington occupied Walls and [DeStefano] inside a nearby bar. Robert Bricker fatally shot [DeStefano] when [he] exited the bar and approached Bricker's car to engage him in conversation. [Petitioner] was not present at the scene at the time of the shooting.

(Answer Ex. 23 at 2.) Many of Petitioner's claims arise from his contention that he "abandoned" the initial plan, which involved the robbery of Walls, and adopted the second plan, which involved the theft of drugs from Walls' unoccupied car. Because theft does not constitute a predicate act for purposes of the felony murder statute, 18 Pa. C.S. § 2502, he argues that he should not have been convicted of felony murder for Bricker's shooting of DeStefano. Thus, he alleges that: the evidence was insufficient to convict him of felony murder (Claim I); the jury instructions on felony murder and robbery were misleading, confusing and inaccurate (Claim II); the erroneous jury instruction relieved the Commonwealth of the burden of proving felony murder (Claim III); trial counsel failed to request an additional instruction that a shooting that took place for personal reasons could not constitute felony murder (Claim IV); the Commonwealth presented different and conflicting theories at Petitioner's trial and Bricker's trial (Claim V); counsel was ineffective for failing to call Sacco and Rende who would have stated that Bricker had an independent reason to kill Walls (Claim VIII); and trial counsel failed to impeach Kellington with his prior statements that Bricker or others wanted to shoot Walls for other reasons (Claim X).

However, Petitioner's argument is incorrect because the term "abandonment" has a specific meaning that is not applicable here. Under Pennsylvania law, a conspiracy is abandoned "only if and when he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation

therein." Commonwealth v. Lloyd, 878 A.2d 867 (Pa. Super. 2005). Petitioner has presented no evidence that he advised his co-conspirators or law enforcement authorities of the existence of the conspiracy and his participation therein. There is no authority to support Petitioner's attempt to apply this concept to his claim that he "abandoned" one plan to commit a crime (robbery of the drugs from Walls) and "adopted" another (theft of the drugs from Walls' car). Thus, as explained below, Petitioner's claims are without merit.

Standard of Review

A petitioner is only entitled to federal habeas relief if he meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d) "firmly establishes the state court decision as the starting point in habeas review." Hartey v. Vaughn, 186 F.3d 367, 371 (3d Cir. 1999). This provision governs not only pure issues of law, but mixed questions of law and fact such as whether counsel rendered ineffective assistance. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

The Supreme Court has held that, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of

materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  The Court has also held that

> the "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case.  In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced."  In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been "objectively unreasonable."

<u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003) (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 76 (2003) (other citations omitted)).  In other words, "the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable−a substantially higher threshold."  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) (citations omitted).

Section 2254(e) provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

<u>Ineffective Assistance of Counsel</u>

A number of Petitioner's claims involve the effectiveness of his trial counsel.  The Supreme Court:

> established the legal principles that govern claims of ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency

prejudiced the defense. Id., at 687, 104 S.Ct. 2052. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Ibid.

Wiggins, 539 U.S. at 521.

To satisfy the second prong of counsel ineffectiveness, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 534 (quoting Strickland, 466 U.S. at 694.) In addition, although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

The Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Werts, 228 F.3d at 204. Thus, the relevant question is whether the decisions of the Pennsylvania courts involve an unreasonable application of Strickland. Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005). See also Taylor v. Horn, 504 F.3d 416, 430 (3d Cir. 2007). That is, a petitioner must show that the state courts "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002).

The question is not whether the defense was free from errors of judgment, but whether defense counsel exercised the customary skill and knowledge that normally prevailed at the time

24

and place.  Strickland, 466 U.S. at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688).

Claim I

In Claim I, Petitioner contends that he was denied due process because the evidence was insufficient to prove every element of the charged offense beyond a reasonable doubt.  This claim was raised on Petitioner's direct appeal.

The Supreme Court has held that, in evaluating a federal habeas petitioner's challenge to the sufficiency of the evidence, the question for the court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The Superior Court held that:

> viewing the evidence in a light most favorable to the Commonwealth, the evidence clearly indicates that [Prosdocimo] advised, encouraged and arranged the initial plan for stealing the drugs and was therefore an accomplice to felony-murder.  The initial plan to "rip-off" drugs from Snooky Walls was devised by [Prosdocimo], Robert Bricker and Charles Kellington approximately two months before the fatal shooting of DeStefano.  It is especially significant that the three co-felons agreed that, to accomplish their plan that a "stick-up" of Snooky Walls would be necessary.  Moreover, Charles Kellington, the prosecution's chief witness, testified that a week before the murder took place [Prosdocimo] had requested to borrow his jeep to search out a burial plot for Snooky Walls in case the plan to steal the drugs went awry.  [Prosdocimo's] actions as testified to at trial show that he was an integral part of the plan to steal the drugs. Moreover, [his] knowledge that force might be necessary to accomplish the criminal purpose is revealed by his scouting for a burial plot. We conclude, therefore, that the jury in this case was entitled to find that [he] was aware of the incipient robbery which

resulted in murder and performed substantial acts evidencing his assistance in furtherance of a felony.

(Answer Ex. 23 at 4) (citations omitted).

Thus, the Superior Court concluded that the evidence was sufficient to support Petitioner's conviction.  Petitioner has not presented clear and convincing evidence to demonstrate that this factual determination should not be presumed correct.  To the extent that Petitioner argues that the evidence supported only a conviction on charges of theft, rather than robbery, he has raised an issue of state law not cognizable in federal habeas corpus.  As the Supreme Court recently reiterated, "we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Waddington v. Sarausad, 129 S.Ct. 823, 832 n.5 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

On the other hand, to the extent Petitioner argues that he "abandoned" the robbery plan and "adopted" the theft plan such that he could not be convicted of felony murder, he cites no authority in support of his contention that the jury was required to reach this conclusion or that it could not examine the "design" as a whole.  In either event, Petitioner has failed to demonstrate that the Superior Court's decision is contrary to or an unreasonable application of Jackson v. Virginia.  Therefore, with respect to this claim, the petition should be denied.

Claim II

In Claim II, Petitioner contends that he was denied due process because the trial court's jury instructions on felony murder and robbery were misleading, confusing and inaccurate, thereby relieving the Commonwealth of its burden of proving every element of the charged

offense beyond a reasonable doubt.  This claim was raised in his direct appeal.

The Supreme Court has held that

> In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. See Sandstrom v. Montana, 442 U.S. 510, 520-521, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is "'whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" Boyde v. California, 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (quoting Cupp, supra, at 146-147, 94 S.Ct. 396). If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, supra, at 72, 112 S.Ct. 475 (quoting Boyde, supra, at 380, 110 S.Ct. 1190).

Middleton v. McNeil, 541 U.S. 433, 437 (2004).

The entire relevant portion of the trial court's jury instruction was as follows:

> The first degree of homicide which you must consider is second degree murder, which is commonly referred to as felony murder. It is commonly called felony murder because it involves a killing incidental to another felony. You may find the Defendant guilty of second degree murder if you are satisfied that the following elements have been proven beyond a reasonable doubt: First, that Gary DeStefano is dead; second, that the Defendant or an accomplice of the Defendant killed him; third, that the killing was committed while the Defendant or an accomplice was engaged in the commission of the felony of robbery; fourth, that the act of the Defendant or his accomplice that killed Gary DeStefano was done in furtherance of the felony of robbery; and finally, that the killing was with malice on the part of the Defendant and/or his accomplice. Like all murders, second degree murder requires malice. But malice is presumed or may be inferred if a Defendant engaged or was an accomplice in the commission of a felony dangerous to human life, such as robbery. No other proof would be necessary under the circumstances. For persons to be accomplices in committing or attempting to commit a felony, they must have a common design, in other words, a shared intent to commit that felony.

Now I will define the felony of robbery for you. In order to find that the Defendant was an accomplice or a party to, that is, he shared a common intent in the commission of the crime of robbery, you must be satisfied that the following elements have been demonstrated: First, that the Defendant or his accomplice inflicted or threatened to inflict serious bodily harm or immediate serious bodily harm to Gary DeStefano during the commission of a felony, and that felony would be theft. Secondly, that the Defendant did so in committing a theft, or that his accomplice did so in committing a theft. Now, serious bodily injury is injury which creates a substantial risk of death, or which causes serious permanent disfigurement or permanent loss or impairment of the function of any bodily member, and clearly death would meet the definition of serious bodily injury. For the purposes of the crime of robbery, a Defendant's act is in the course of committing a theft not only if it occurs in the actual commission of a theft, but if it occurs in an attempted theft. As I have indicated, in order to conclude that a robbery was contemplated here, you must be satisfied beyond a reasonable doubt that the Defendant or his accomplice committed a theft or attempted to commit a theft. A person commits a theft if he unlawfully takes movable property of another with the intent to permanently deprive him of that property. A person attempts to commit a theft when, with the intent to commit a theft, he does an act which constitutes a substantial step towards the commission of a theft.

To summarize, in order to find the Defendant guilty of second degree murder, you must be satisfied that the murder occurred during the course of a robbery, which would include an intent to permanently deprive somebody of property belonging to another, and that the Defendant did, either directly or as an accomplice, in the commission of that offense.

If you do not conclude that the Defendant is guilty of second degree murder, that is if you conclude that the Commonwealth has not proven all of the elements of that offense beyond a reasonable doubt, then you must determine whether or not the Commonwealth has met its burden of proving that the Defendant is guilty of third degree murder.

(TT 945-49.) Respondents argue that this charge tracked the language of the Pennsylvania Standard Jury Instructions for Second Degree Murder and Robbery that were in use in 1984 nearly verbatim, and the Pennsylvania Supreme Court so held on direct appeal. Commonwealth v. Prosdocimo, 578 A.2d 1273, 1275 (Pa. 1990).

The Pennsylvania Supreme Court held that:

The Superior Court stated that the trial court "contradicted itself by confusing the terms of theft and robbery," and "apparently used the term 'theft' interchangeably with the term 'robbery' and it is unclear whether the jury was aware of the legal distinctions between these two terms." That court noted:

> The distinction becomes even more crucial when it is noted that [Prosdocimo's] defense consisted of showing that [Prosdocimo's] participation was limited to a plan of theft of an unoccupied car. [Prosdocimo] was prejudiced by the confusing jury charge because it diminished the jury's capacity to distinguish between the elements of theft and felony-murder.

This conclusion was drawn from the trial court's definition of robbery: "First, that the Defendant or his accomplice inflicted or threatened to inflict serious bodily harm to Gary DeStefano during the commission of a <u>felony, and that felony would be theft</u>."

The quoted portion of the charge is not incorrect, nor is it confusing. The underscored words "felony, and that felony would be" are surplusage, but, with or without those excess words, the instruction is correct. The deletion of six words would have little, if any, impact on the entire five hundred fifty-word charge considered as a whole. The Superior Court apparently misread the charge as substituting theft for robbery as the underlying felony in the felony-murder statute, and stated that "we cannot conclude that the jury understood the distinction between robbery and theft." We reject this analysis, however. The trial court instructed the jury *four* times during its charge that the underlying felony was robbery and nowhere stated that the homicide might be felony-murder if it occurred during a theft rather than a robbery.

The peril in the approach of the Superior Court is in its failure to examine the charge in its entirety. It seems likely that the trial judge did not read his charge from a written script; it therefore failed to attain the standard of perfection we would strive for in preparing a hornbook text. Nevertheless, in speaking to the jury, the judge conveyed what the jurors needed to know. We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision.

\* \* \*

We observe also that the jury charge closely tracked the language of the suggested standard jury instructions for the crimes of felony-murder, robbery, and theft. We therefore hold that the jury charge was accurate, adequate, and sufficiently clear to

inform the jury of the law applicable to the case.

(Answer Ex. 30 at 4-5.)

Petitioner has failed to demonstrate that the Pennsylvania Supreme Court's decision is contrary to or an unreasonable application of <u>Middleton</u>. Therefore, with respect to this claim, the petition should be denied.

<u>Claim III</u>

In Claim III, Petitioner argues that the jury instructions relieved the Commonwealth of its burden to prove that he committed felony murder and that counsel was ineffective for failing to raise this issue. As noted above, on direct appeal, the Pennsylvania Supreme Court upheld the jury instructions as proper. When the Superior Court was presented with this issue on appeal of the denial of Petitioner's PCRA petition, it held as follows:

> Under the law of the case doctrine, "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that court or by a higher court in the earlier phases of the matter." <u>Commonwealth v. Starr</u>, 664 A.2d 1326, 1331 (Pa. 1995). Given that our Supreme Court analyzed the felony murder instruction as a whole and concluded that it was adequate, clear, and accurate, we cannot now conclude, pursuant to the law of the case doctrine, that the same instructions were flawed as suggested by [Prosdocimo]. The excerpted portion of the lengthy charge reproduced in the Supreme Court's 1990 decision in this case included portions of law pertaining to malice, accomplice liability, and what constitutes an underlying felony for purposes of second degree murder, all of which the Court deemed adequate, accurate, and complete. Accordingly, we cannot conclude that trial counsel was ineffective for failing to request further instructions or lodge objections to these instructions, as counsel cannot be deemed ineffective for failing to raise meritless claims.

(Answer Ex. 54 at 37-38.)

Petitioner argues that this claim is entitled to de novo review because the Superior Court erred in concluding that the Pennsylvania Supreme Court had already addressed the jury

instruction on direct appeal and that it was the law of the case because the Supreme Court addressed only the issue of whether the felony murder instruction confused robbery and theft, not whether the malice portion of the instruction was erroneous. As Petitioner notes, the Court can reach the merits of this claim. See Cone v. Bell, 129 S.Ct. 1769, 1784 (2009) (when a petitioner presents a claim to a state court but the court does not reach the merits of the claim, federal habeas review is not subject to the deferential AEDPA standard, but rather the claim is reviewed de novo).

Respondents argue that evidence adduced at trial indicated that Petitioner encouraged, and arranged the initial plan of stealing the drugs from Gerald Walls. Two to three months before the murder, Petitioner, Charles Kellington, and Robert Bricker devised a plan whereby the three would "rip off" drugs from Walls at the time of delivery (TT 520-22). The three men agreed that the theft "would probably have to be a stickup," because Walls was known to carry a gun (TT 523). Approximately five days prior to DeStefano's death, Petitioner placed an order with Walls requesting delivery of three to five hundred pounds of marijuana and fifty thousand or more methaquaalude tablets (TT 331-32). However, unbeknownst to Walls, they planned to steal the drugs from him. In the course of preparation for this scheme, at Petitioner's request, Charles Kellington drove Petitioner to a wooded area in Hazelwood, and to an area known as the "Prairie" in Greenfield. During the drive, Petitioner and Kellington discussed their search for a burial site for Walls "in case something went wrong during the drug transaction." (TT 531-33.) It was agreed that once the marijuana was taken from Walls, it would be given to Charles Bonasorte to sell, for all three conspirators. (TT 522.)

The charge given in this case closely and accurately reflects the suggested jury instruction

in use at the time. Petitioner attacks the following language: "that the killing was with malice on the part of the Defendant and/or his accomplice." (TT 946). Petitioner claims that the addition of the words "and/or his accomplice" was misleading to the extent the it could be understood to allow the jury to reach a Second Degree Murder verdict with no finding that Petitioner himself possessed the requisite mental state.

However, reviewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to find that Petitioner was an accomplice. The evidence produced at trial clearly indicated that Petitioner encouraged and arranged the initial plan of stealing the drugs from Gerald Walls. The evidence indicated that the group decided that it might be necessary to use force. Petitioner knew that the force might become necessary because he searched for a place to bury Walls.

Petitioner argues that Respondents rely on evidence relating to the original plan, which had been abandoned. As discussed above, however, the jury was not required to reach this conclusion and there is no support in the law for Petitioner's argument that he "abandoned" the robbery plan and adopted the theft plan. The evidence supports the conclusion that the overall "plan" was to steal the drugs from Walls and to use whatever force might be necessary to achieve this goal.

Petitioner has failed to demonstrate that this issue has merit. Therefore, with respect to this claim, the petition should be denied.

Claim IV

In Claim IV, Petitioner contends that he was denied due process and the effective assistance of counsel because the jury was not instructed that he could not be convicted of felony

murder if the murder was committed for personal reasons independent of the underlying felony, and counsel did not request a proper instruction on this point. This claim was raised in the PCRA petition. However, the Superior Court held that, because the Pennsylvania Supreme Court held that the jury instructions given were proper, this was the law of the case. Petitioner argues that the Superior Court erred because the Pennsylvania Supreme Court held only that the instructions were proper as to the issue of felony murder, not with respect to this issue.

Respondents point out that trial counsel in fact did request more specific instructions on this issue:

> You said that the instruction on robbery, you were going to give a standard instruction. I believe, Your Honor, that the pattern jury instruction on robbery is insufficient under the law in a situation where you have a felony murder that attaches to the robbery. In fact, I think it is insufficient on a robbery charge. The Supreme Court of Pennsylvania has clearly held in several cases that for a jury to find an intent to commit the robbery, and that for a second degree murder charge to be tacked onto that, there has to be a finding of a common design to commit the robbery on the part of all of the accomplices. I think that when you look at the standard jury charge on robbery, and standard jury instruction on second degree murder, they simply don't tell the jury the things that the case law indicates the jury has to be told, that the murder has to occur in furtherance of the robbery, and there has to be a specific intent as to the robbery.

(TT 755-56.)

In addition, Respondents note that the record contains substantial evidence of a "common design" to rob Walls, and if necessary to murder him (including a plan to dispose of his body) or anyone else who interfered with the plan, but there is no evidence that Petitioner ever renounced or abandoned the common design to commit robbery. Rather, Petitioner only cites evidence which generally suggests that the plan was altered, based on the situation. The conspirators could not lure Walls to the initial ambush site, so they improvised by trying to steal the drugs

33

from his car.  That improvisation, however, was squarely within the ambit of the original robbery and/or murder plan.

Moreover, the conspirators had always been ready, willing and able to rob and, if necessary, murder the drug courier to get the drugs.  They did not renounce violence.  On the contrary, Kellington was armed and Bricker was armed with a gun with a silencer. (TT 526, 535). There is no evidence that they got rid of their guns in pursuit of the "new plan" to commit a "mere theft."

As events unfolded, Bricker did exactly what the original plan had contemplated—he committed murder to get the drugs.  The conspirators had devised a plan that spanned an array of violent crimes, which included murder; but at the very least, it encompassed a conspiracy to commit armed robbery.  The fact that one of the improvised plans—which was subject to change at any moment—was to break into the Cadillac's trunk and steal the drugs does nothing to change the nature of the overall plan.  Petitioner's position that the "theft" plan was the ultimate plan cannot be accepted, because at any moment circumstances might require yet another course of action.  There was never any guarantee that Walls and/or DeStephano would not do something causing the conspirators to drop the "mere theft" plan and return to the "robbery" plan.  In fact, this is precisely what happened.  The very fact that Walls was "[a]lways" armed (TT 538) undercuts any suggestion that the conspirators had ever foresworn robbery and murder.

Finally, under Pennsylvania law, a conspiracy is abandoned "only if and when he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein." Commonwealth v. Lloyd, 878 A.2d 867 (Pa. Super. 2005).  Petitioner has presented no evidence that he advised his co-

conspirators or law enforcement authorities of the existence of the conspiracy and his participation therein and thus even if counsel had not requested an additional jury instruction, her actions would not have been ineffective.

Petitioner has not demonstrated that this claim has merit. Therefore, as to this claim, the petition should be denied.

Claim V

In Claim V, Petitioner argues that he was denied due process because, in two different trials, the Commonwealth presented contradictory theories of liability for the DeStefano homicide. That is, he argues that the Commonwealth's actions in the Bricker trial and in his denied him due process. Petitioner raised this claim in his direct appeal.

Trial counsel moved to quash the information, on the basis that the Commonwealth proceeded on a different theory of the case against the shooter, Robert Bricker, than the felony murder theory advanced at Petitioner's trial. Attorney Fleisher made a motion in limine to that effect, which was denied. (TT 118-19.) At a later point in the trial, Attorney Fleisher indicated that subject to the court's ruling, she proposed to call the court reporter at the Bricker trial to review certain comments made by the prosecutor in that case during his closing. She conceded, however, that the applicable law was against her on the question of the admissibility of that evidence. (TT 710-12,756-62.) Ultimately, the trial court refused to admit the proffered evidence. (TT 763-64.)

In discussing the admissibility of the excerpts from the prosecution's closing in the Bricker case, the trial court explained that it perceived no relevance to the theory argued by the prosecutor, Assistant District Attorney Paul Von Geis, in the Bricker trial. Judge Scarlata held as

35

follows:

> Before you close there are a number of matters that are still outstanding. The first of those is the Defendant's proffer to, or request to be permitted to prove the acquittal of Robert Bricker in the companion case, and secondly to prove certain statements made by the District Attorney in his closing argument in the Bricker case.
>
> I find no authority whatsoever, indeed I find contrary authority for allowing introduction of the Bricker acquittal, and as defense counsel had candidly admitted, it would seem that the weight of authority is against that proposition. I therefore will not prohibit that—or will prohibit that, I'm sorry.
>
> In addition, the question of proving what the prosecutor said in his closing argument, it seems to me that an accurate analysis of that would turn on whether or not I would allow the Defendant to call Mr. Von Geis to testify, I don't think I would under any circumstances. He knows nothing about this case, nor did he know anything about the Bricker case from firsthand knowledge. And his theory or his approach to the case is not relevant in this case. It is nothing more than his opinion, at best, which may or may not be accurate, and is not relevant to the instant case. Therefore, that also will be prohibited.

(TT 763-64.)

In his February 4, 1987 Opinion, Judge Scarlata addressed the claim as follows:

> Defendant's next point of error also relates to the trial of his co-defendant, Robert Bricker. Defendant sought to present to the jury evidence of the Commonwealth's theory in the Bricker case. It is Defendant's contention that the Commonwealth changed theories in each case and therefore, he should have been permitted to read to the jury the District Attorney's closing argument in the Bricker trial. Defendant also contends that the Court should have prevented the Commonwealth in this case from arguing a different theory than it argued in the Bricker trial.
>
> The theory or approach of the District Attorney in the Bricker case has no relevance to the instant case. The theories asserted by District Attorneys are no more than their opinions as to what the evidence has proven. The request to read portions of the Bricker transcripts to the jury were properly denied. The Commonwealth was free to argue whatever theory it chose in this case.

(Answer Ex. 20 at 11-12.) In its March 14, 1991 Opinion on direct appeal, the Superior Court of

Pennsylvania affirmed the judgment of the Court of Common Pleas based on the trial court's reasoning. (Answer Ex. 31 at 2-3.)

Petitioner cites several cases in which other courts of appeals (but not the Third Circuit) have held that a prosecutor's inconsistent arguments in the separate trials of two co-defendants for the same criminal act denies both defendants fundamentally fair trials. Thompson v. Calderon, 120 F.3d 1045, 1058 (9th Cir. 1997) (en banc) (concluding that "when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime"), vacated on other grounds, 523 U.S. 538 (1998); Smith v. Groose, 205 F.3d 1045, 1050, 1052 (8th Cir. 2000) ("The State's duty to its citizens does not allow it to pursue as many convictions as possible without regard to fairness and the search for truth ... [and] the use of inherently contradictory theories violates the principles of due process."). But see United States v. Frye, 489 F.3d 201, 214 (5th Cir. 2007) ("a prosecutor can make inconsistent arguments at the separate trials of codefendants without violating the due process clause.")

First of all, Petitioner has not presented a situation in which the prosecution argued that a different person was responsible for the crime at each trial. See Smith, 205 F.3d at 1050 (at Smith's trial, prosecutor used a statement implicating Smith and his cohorts in the murders, but in a subsequent trial, the same prosecutor used a different statement implicating others); Thompson, 120 F.3d at 1058-59 (state of California violated a defendant's due process rights by arguing at Thompson's trial that he alone committed a murder, while arguing at a subsequent trial that another defendant actually committed the same murder). In this case, Bricker was the acknowledged shooter at all times and the only difference between the two trials was whether

Bricker acted for Prosdocimo or on his own. Thus, this case does not appear to present the problem identified by the courts in <u>Smith</u> and <u>Thompson</u>.

Moreover, Petitioner has not met the standard required to obtain habeas relief. The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. The standard is not met by citing opinions from courts of appeals, particularly when the Court of Appeals for the Third Circuit has not identified the issue.

Petitioner cites cases such as <u>Berger v. United States</u>, 295 U.S. 78 (1935), <u>Miller v. Pate</u>, 386 U.S. 1 (1967), and <u>Napue v. Illinois</u>, 360 U.S. 264 (1959), which stand for the general proposition that a prosecutor may not knowingly use false evidence to obtain a conviction. However, there is no evidence that the prosecution did so in this case. More importantly, the Supreme Court "has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories." <u>Bradshaw v. Stumpf</u>, 545 U.S. 175, 190 (2005) (Thomas, J., concurring).

Petitioner has not and cannot point to the appropriate authority in support of his habeas claim. <u>See</u> <u>Fotopoulos v. Secretary, Dept. of Corrections</u>, 516 F.3d 1229, 1234-35 (11th Cir. 2008) (rejecting habeas due process claim based on the fact that the prosecution argued two inconsistent theories at different trials). Petitioner has not demonstrated that the state court decisions were contrary to or an unreasonable application of any Supreme Court precedent, because there is no Supreme Court case that establishes the principle upon which he relies. Therefore, as to this claim, the petition should be denied.

<u>Claim VI</u>

In Claim VI, Petitioner argues that he was denied due process and the effective assistance of counsel when the trial court advanced the trial date[4] and denied trial counsel's motion for a continuance, and that counsel failed to adequately explain the grounds for requesting a continuance. This claim was raised both on direct appeal and in the PCRA petition. Respondents note that, contrary to Petitioner's representation, Attorney Fleisher was very actively involved throughout the case: she presented a motion to quash, numerous motions in limine, voir dire questions and made a series of discovery requests and requested a continuance. (TT 38-123; HT 79-83.) When she requested a continuance based on her inability to prepare, Judge Scarlata responded as follows:

> The question of your inability to be adequately prepared is belied by the litany of in limine motions that you presented this afternoon, which show extraordinary preparedness on your part, perhaps more so than most other lawyers. If Mr. Prosdocimo is dissatisfied with your ability to prepare, I think he's mistaken. I think you, so far at least, have shown an intimate familiarity with the facts of the case, perhaps more than your adversary who oftentimes has to say, "I'll go and talk to Mr. Kellington before I answer that." And you seem to have the answer to that. So, I am unable to discern any flaw in your representation and indeed I commend you on your preparation.

(TT 124-25.)

In his February 4, 1987 Opinion, Judge Scarlata addressed the claim as follows:

> As to counsel's inability to adequately prepare, such a contention is belied by the numerous In Limine Motions that counsel presented and her demonstration of having an intimate familiarity with the facts of the case. This Court was and is unable to discern any flaws in counsel's preparation or performance. On the contrary, counsel's performance showed a thorough understanding of both the law

---

[4]     In a footnote, Petitioner speculates as to why Judge Scarlata advanced the trial date (ECF No. 15 at 43 n.8). This Court need not respond to these musings, which do not constitute evidence. The issue is whether he was denied due process or the effective assistance of counsel.

and the facts and the underlying preparation necessary to advance the various arguments and theories suggested during the trial. In short, any criticism of counsel is completely without merit.

(Answer Ex. 20 at 14.) In its March 14, 1991 Opinion on direct appeal, the Superior Court affirmed the judgment of the Court of Common Pleas based on the trial court's reasoning. (Answer Ex. 31 at 2-3.)

In its August 22, 2007 opinion on appeal from the denial of the PCRA, the Superior Court held that trial counsel could not be found to be ineffective for raising a meritless issue, as the court had already concluded that his claim that the trial court erred by not granting a motion for a continuance was without merit. (Answer Ex. 54 at 16-17.) In addition, the court found that trial counsel was not ineffective for failing to properly request a continuance so that she could investigate and possibly call as witnesses Sam Rende and John Sacco. (Answer Ex. 54 at 17-21.)

Petitioner has not demonstrated that the Superior Court's decisions were unreasonable applications of <u>Strickland</u>. Therefore, as to this claim, the petition should be denied.

<u>Claim VII</u>

In Claim VII, Petitioner argues that he was denied the effective assistance of counsel when Attorney Fleisher failed to object to prejudicial closing arguments by the prosecution. Specifically, he objects to the following three statements made by the district attorney:

> This was well thought out, this was done in advance, all the people, Mr. Bricker, Kellington, Mr. Prosdocimo, in order to effectuate, in order to get this thing done, in order to get Mr. Walls in a position where he could be ripped off. Why? For the same reason that Mr. Prosdocimo deals in drugs, greed, money. And whether it's selling drugs or ripping people off, robbing them, I'd suggest to you, ladies and gentlemen, that makes absolutely no difference to that man, absolutely none. He's there to make money however he does it.
>
> * * *

Ladies and gentlemen, I'd suggest that if Walls had agreed to go to Eggy's house, murder would have occurred, ladies and gentlemen, but there would have been two, Walls and DeStefano. And if it occurred at Lester's the murdered would have been two, Walls and DeStefano. It turns out, ladies and gentlemen, during the course of committing that robbery a man was killed. The fact that it's only one, ladies and gentlemen, does not mean it's not felony murder. It is. It's the same as Snooky Walls, he's the man that would prevent the robbery from occurring or attempt to prevent it. And if that's what he's there for, he's there to protect the interest of Gerald Walls in his drugs, and he's killed during the course of that, and that's robbery, that's felony murder, and that man is guilty because he's a part of the team. He's one of the players. Because without his request the drugs never get there, and there's no reason for the rip-off, there's no reason for the murder.

* * *

And it leads to one conclusion and only one conclusion, that that man planned the robbery, anticipated a murder of at least Snooky Walls, and if it required killing Stretch DeStefano or both, it made no difference. This is criminal activity running wild, and if it's murder or it's rip-offs, or if it's pay-offs, or it's drug sales it doesn't make any difference, ladies and gentlemen. Ladies and gentlemen, I'd submit to you that that is the reason why we have felony murder, not only for shooters, but for everybody, for all of the team people. The man who gets the drugs there, who plans the robbery, who plans murder, even if it means that Bricker pulls the trigger at the house, at Lester's, or in Market Square or anywhere else, whatever it takes to get those drugs, be it murder or anything else, we'll do it. All of the people. All of the people are equally responsible. Just like a team, the Pirates and the Steelers. If they win a Super Bowl they all get raises, ladies and gentlemen, special team players, coaches, offense, defense, everybody, they all get the proceeds, they all get the shares. Just as they all got the shares here from what they did, from their criminal activity, ripping off Gerald Walls.

(TT 887-88, 916-17, 921-22.)

Respondents contend that these statements constituted sound inferences to be drawn from the evidence. There was evidence that Petitioner made money from drug transactions. (TT 328.) There was evidence that the conspirators planned this crime as an armed robbery. (TT 520-23.) Indeed, they anticipated that murder might be necessary and even looked for a place to bury the body. (TT 531-33.) There was evidence that the "proceeds" of this transaction would be split

among the conspirators, including Petitioner. (TT 522.)

Respondents also note that these statements were a fair response to trial counsel's closing argument, which questioned why Petitioner would be involved. In her closing argument, counsel stated that "there is substantial doubt that Prosdocimo with no reason, no earthly motive in the world, would get involved in a plot that Charles Kellington was trying to describe to you." (TT 876.) She further said, "[w]hen you go back in your jury room ask yourselves questions why, why would Prosdocimo do this, why on earth would this plot ever have been conceived of in the way it was?" (TT 879.) In the challenged statements, the prosecutor provided the jury with the answer to her query: the conspirators were willing to commit whatever crimes were necessary to acquire the drugs which would then be sold and the proceeds would be divided among them.

In its August 22, 2007 Opinion, the Superior Court of Pennsylvania addressed the claim as follows:

> We find no prosecutorial misconduct in these remarks. Each remark was reasonably related to the evidence that was presented and was consistent with the Commonwealth's theory throughout the case that [Prosdocimo] was involved in the plan to rob Walls and to take the drugs by force, if necessary. The evidence revealed that one of the initial plans was to lure Walls over to [Prosdocimo's] house with his associate, DeStefano, the jury could infer that one or both of them would have been robbed at gunpoint and/or killed. Since Walls refused to go to [Prosdocimo's] house, the plan changed to taking the drugs form Walls's and DeStefano's unoccupied car, but this does not change the fact that the evidence supported the inference that [Prosdocimo] participated in a plan to rob Walls and/or DeStefano with the use of force, should it become necessary, as it apparently did. Indeed as we noted in a previously published opinion in this case: "the agreement among [Prosdocimo], Bricker and Kellington was 'open-ended', transcending a multitude of different factual settings and legal constructions. They did not attempt to confine their actions to a single neat classification, be it 'theft' or 'robbery'. Rather, they intended to commit whatever crime or crimes were necessary to effectuate their ultimate objective of obtaining the drugs." Commonwealth v. Prosdocimo, 479 A.2d 1073, 1077 (Pa. Super. 1984). Thus, in sum, the Commonwealth's comments were in conformance with the evidence and

42

the reasonable inferences that the jury could draw from the evidence and did not, therefore, amount to prosecutorial misconduct. Accordingly, we further conclude that trial counsel cannot be deemed ineffective for failing to object to the Commonwealth's closing argument.

(Answer Ex. 54 at 34-35.)

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of <u>Strickland</u>. Therefore, as to this claim, the petition should be denied.

<u>Claim VIII</u>

In Claim VIII, Petitioner contends that trial counsel was ineffective for failing to investigate and interview four witnesses: John Sacco, Sam Rende, Frank Faiello and Jerry Alexander. As noted above, he never raised this issue with respect to Faiello and Alexander in the state courts and therefore as to those two witnesses the claims are unexhausted and procedurally defaulted. With respect to John Sacco, at the PCRA evidentiary hearing, Petitioner called this witness, who was tending bar at Butchie's on the night of the murder, apparently in order to establish that Kellington and Walls did not receive or make telephone calls from the bar that evening.

The full extent of his testimony on the questions whether Sacco saw Walls make or receive, or Kellington receive, any phone calls was as follows:

Q: Do you recall him [Kellington] receiving any phone calls while he was at the bar and you giving him the phone?

A: No.

* * * *

Q: Do you remember him [Walls] going behind the bar and using the phone on the evening that DeStephano was killed?

43

A: No.

Q: Do you recall Gerald Walls receiving any phone calls or you giving the phone to him after receiving a phone call?

A: No, sir, I do not.

(HT 10.)

However, Sacco testified that people generally did make and receive telephone calls in the bar.  (HT 12, 13.)  He further testified that both Walls and Kellington used that particular telephone.  (HT 13.)  In addition, he testified that he recalled that, on the evening in question, Kellington was behind the bar—where the phone was located.  (HT 9, 10.)  Sacco also testified that Walls was in the bar that night.  However, he did not recall who received phone calls on days close in time to the day in question. (HT 12.)  Sacco testified that no one contacted him regarding his testimony.  (HT 14.)

In its August 22, 2007 Opinion, the Superior Court of Pennsylvania addressed the claims as follows:

> In any event, the testimony of potential witness John Sacco would have done little, if anything, to further impeach Kellington's testimony. FN 6. At the PCRA hearing, John Sacco testified that he was the bartender at Butchie's on the night of the shooting and, although he did not recall Kellington using the phone behind the bar, he did not recall Kellington being behind the bar. Sacco also indicated that Kellington had used the bar phone in the past and that it was common procedure for people to use the phone if they asked. Moreover, there were other bartenders working that night. Finally, although Sacco indicated that he told [Prosdocimo's] brother, prior to trial, that he was available to testify, he could not recall where he was on the dates of trial. Overall, [Prosdocimo] failed to establish that that absence of Sacco's testimony prejudiced him to the extent that he was denied a fair trial. Sacco's weak testimony would have contributed little if anything to the thorough efforts of defense counsel in impeaching Kellington.
> _____
> FN 6. Examples of the thorough impeachment of Kellington by Attorney Fleisher at trial include her extensive cross examination of him regarding (1) his prior

charges and conviction, including prior convictions on various *crimen falsi* offenses like counterfeiting and burglary; (2) the leniency granted to him in pending criminal cases against him, including a murder case in Florida, the "McGregor" murder, and the murder in the instant case, in consideration for his testimony against [Prosdocimo]; (3) his extensive history of drug abuse, including cocaine, speed, and Quaaludes; and (4) his history of lying on his parole forms. Additionally, by way of further example, Attorney Fleisher impeached Kellington using his prior testimony on issues such as the time he arrived in Butchie's bar, the kind of gun in Bricker's possession, the details surrounding the drive with [Prosdocimo] prior to the shooting to find a burial spot for Walls, should he be killed, and the reasons Bricker gave for shooting DeStefano. She used testimony from the preliminary hearing to impeach Kellington on the issue of where he got his share of the profits after the drugs that were stolen were sold. Attorney Fleisher also got Kellington to concede that, on the evening of the shooting, he had drunk a fifth of whiskey and was doing cocaine. She got him to admit, "[s]ometimes I get mixed up." As is apparent from these examples, Attorney Fleisher thoroughly cross examined Kellington and attacked his credibility.

(Answer Ex. 54 at 19-20) (citations omitted).

With respect to Sam Rende, Petitioner also called this witness at the PCRA evidentiary hearing, ostensibly to establish that Charles Kellington was not in his store on June 13, 1979. However, Rende did not know what day of the week it was, and he could only "assume" that his store was open on that day. (HT 18.) He could not remember on what specific day Kellington was in his store. (HT 20.) He was not certain if Kellington was there on any specific day. (HT 20.) Rende was not sure if his store was open after 6:00 P.M. on any specific day. (HT 20.)

In its August 22, 2007 Opinion, the Superior Court of Pennsylvania addressed the claims as follows:

[Prosdocimo] cannot establish that the outcome of trial would have been different if Attorney Fleisher would have presented Rende as a witness or in support of a continuance. Rende's testimony was not certain as [Prosdocimo] would like. At the PCRA hearing, Rende admitted that he had no recollection of what he was doing on the evening of the shooting, and he could only "assume" that he was at the clothing store. He conceded that he could not recall if Kellington was at his store on the evening of the shooting, and he could not recall where he was during

45

the dates of the trial in this case. Thus, we disagree with [Prosdocimo's] assessment of the impeachment power that Rende's testimony would have had at trial. [Prosdocimo] cannot establish that he was prejudiced by the failure of defense counsel to call Rende as a witness such that [he] was denied a fair trial or that the court would have granted a continuance to allow counsel to further investigate Rende.

(Answer Ex. 54 at 20-21) (citations omitted).

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of Strickland. Therefore, as to this claim, the petition should be denied.

Claim IX

In Claim IX, Petitioner argues that trial counsel denied him the opportunity to testify and failed to ensure that his waiver was voluntary, knowing and intelligent. He raised this issue on direct appeal. With respect to Petitioner's claim that counsel was ineffective for interfering with his right to testify, it is well settled that he must demonstrate that 1) counsel actively interfered with the defendant's freedom to testify; or 2) gave advice so unreasonable as to vitiate a knowing and intelligent decision not to testify. A criminal defendant has a fundamental right to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44 (1987). The right is fundamental to due process of law and the adversarial process. Id. at 51. The defendant's right to testify is firmly rooted in the United States Constitution and is grounded in the Due Process Clause of the Fourteenth Amendment. Id. at 51. The right is also derived from the Compulsory Process Clause of the Sixth Amendment, which grants the defendant the right to call witnesses in his defense, and has been made applicable to the states through the Fourteenth Amendment. Id. at 52.

On direct appeal, on March 14, 1991, the Superior Court of Pennsylvania held as follows:

[Prosdocimo's] specific argument is that trial counsel was ineffective for "refusing to allow" [him] to testify on his own behalf. [Prosdocimo's] allegations

46

in this regard center on counsel's supposed actions in "choosing" not to allow [him] to testify, and "denying" [Prosdocimo] that opportunity. These vague allegations must fail. It is settled that "(t)he decision whether or not to testify on one's own behalf rests solely with the defendant." <u>Commonwealth v. Rawles</u>, 501 Pa. 514, 525 n. 3, 462 A.2d 619, 624 n.3 (1983)[.] Here, there is no indication in the record of any disagreement between [Prosdocimo] and his trial counsel as to his testifying. Accordingly, [Prosdocimo's] ineffectiveness claim lacks merit.

(Answer Ex. 31 at 5-6.) On PCRA appeal on August 22, 2007, the Superior Court concluded that the claim was previously litigated on direct appeal. (Answer Ex. 54 at 13-14.)

Because Petitioner presented this claim to the state courts but they did not reach the merits of it, the Court can reach the merits of this claim and it should be reviewed de novo. The record discloses that Attorney Fleisher had, in fact, discussed with Petitioner the issue of whether or not he should testify. (HT 37.) At the PCRA hearing, Petitioner admitted that his attorney had talked to him about testifying and that she had communicated to him her concern about his other crimes. (HT 163.) In a Verified Statement that Petitioner submitted in connection with the PCRA litigation, he conceded that "Ms. Fleisher told me that my testimony would not benefit my defense." (Answer Ex. 34 App. C.)

In addition, the record discloses that Petitioner acceded to her judgment that he should not testify. Attorney Fleisher stated in her Verified Statement that she stated that "Mr. Prosdocimo acceded to my wishes, but didn't like it and made that known to me at every opportunity." (Answer Ex. 34 App. B.) Her testimony before the PCRA court was to the same effect. She stated that she urged Petitioner not to testify because there would be extensive cross-examination as to other crimes and indictments. (HT 92.) She stated that she did not want him to implicate himself in other crimes. <u>Id.</u> She did not want him to take the witness stand. <u>Id.</u> Although "he didn't like it," he "gave in to it." <u>Id.</u> Thus, Petitioner admits that Attorney Fleisher

talked to him on multiple occasions concerning his right to testify, that she told him he should

not testify and that her reasoning was that he should not risk implicating himself in, or being

impeached with, other crimes. Although he may not have agreed with her decision, he "gave in

to it." Thus, he cannot maintain his claim that she "denied" him the opportunity to testify.

For these reasons, this claim is not supported by the record and is without merit. With

respect to Claim IX, the petition should be denied.

<u>Claim X</u>

In Claim X, Petitioner argues that he was denied the effective assistance of counsel when

trial counsel failed to confront Kellington, a key Commonwealth witness, with his prior

inconsistent statements, specifically a taped statement to the police dated June 6, 1981 in which

he discussed an independent plot to kill Gerald Walls because he did not keep his part of the

bargain in another murder, a plot in which Petitioner was not involved. On PCRA appeal on

August 22, 2007, the Superior Court of Pennsylvania held as follows:

> Thus, overall, we conclude that Kellington's statements to the police were
> actually consistent with his trial testimony. During the police interviews,
> Kellington described two different plans against Walls, one of which involved
> [Prosdocimo]. Introducing evidence concerning the plan that did not involve
> [Prosdocimo] would not have any impeachment effect on Kellington's testimony
> describing the plan that did involve [him].

> Moreover, Attorney Fleisher had a reasonable strategic basis to avoid
> introduction of evidence concerning the other plan. At the PCRA hearing,
> Attorney Fleisher admitted that she did not want [Prosdocimo] to be associated
> with Griffin and Hankish. Indeed, she objected at trial when Walls testified that
> he reported to Hankish. She argued at sidebar that it was publically known that
> Griffin and Hankish were associated with the "Mafia" in West Virginia and that
> such a connection would be "highly prejudicial" to [Prosdocimo].

> Additionally, prior to trial, Attorney Fleisher made a motion *in limine* to
> exclude evidence pertaining to the other plot to kill Walls that did not involve

[Prosdocimo]. She argued that testimony regarding the other plot would be "highly inflammatory and prejudicial" because, although Bricker may have been involved in both plots, [Prosdocimo] had no knowledge of the other plot to have Walls killed in retaliation for the Uniontown incident. Indeed, the trial court recognized that, had it permitted the Commonwealth to introduce evidence of this other plot and try to tie [Prosdocimo] to it, the Commonwealth could have proceeded against [him] on a theory of first degree murder. After hearing argument on Attorney Fleisher's motion *in limine*, the court concluded that there was no evidence of [Prosdocimo's] knowledge of the other plot. Given these circumstances, Attorney Fleisher had a reasonable strategic basis to exclude evidence of the independent murder plot in which [Prosdocimo] was uninvolved. Accordingly, this ineffective assistance of counsel claim fails.

(Answer Ex. 54 at 25-26.)

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of Strickland. Therefore, as to this claim, the petition should be denied.

Claim XI

In Claim XI, Petitioner alleges that trial counsel was ineffective when she allowed Walls to implicate him in other crimes. He raised this claim in his PCRA petition.

The testimony that Petitioner complains about occurred when Walls was testifying about his plea agreement with the United States Attorney's Office and the Allegheny County District Attorney's Office. Walls testified as follows:

Well I'm confused on that, because I went over and they gave me what they call a proffer, and that's no deal, you just go over and you tell them what you know. So, they was interested in the DeStefano case. But when I went over I told them about a half a dozen murders, because everybody was connected. This guy was connected to this, this guy was connected with this.

(TT 436.) Immediately after the statement, trial counsel moved to strike it. (TT 436.) Trial counsel requested a sidebar and moved for a mistrial. (TT 437.) Judge Scarlata denied the motion. Id. Trial counsel agreed to a cautionary instruction, without waiving her exception to

the ruling.  Id.  Judge Scarlata gave the following instruction, immediately after the sidebar:

> Ladies and gentlemen, the last answer by the Defendant is germane or relevant on the deal that he made with the United States Attorney's Office, but you should in no way infer that his statement about the murders being interrelated, and this guy had something to do with that and so on and so forth in any way implicates Mr. Prosdocimo in anything at all other than the direct testimony that you have heard from that relates to this specific murder.

(TT 438.)  Respondents argue that Judge Scarlata did not abuse his discretion and the curative instruction negated the prejudicial effect.  The statement was not a clear implication of Petitioner in any other criminal activity, and Judge Scarlata's instruction cured any prejudicial effect. Petitioner is not entitled to relief on this issue.

Second, Petitioner claims that the trial court should have granted a mistrial because of statements Walls made about being in the witness protection program. Petitioner argues that the cautionary instruction that was given following the statement only served to highlight the testimony and suggest that Walls was in the witness protection program because of Petitioner.  In the alternative, Petitioner argues that trial counsel was ineffective for failing to move for a mistrial when Walls discussed the witness protection program.

On May 16, 1985, Attorney Fleisher made a Motion In Limine to prohibit the Commonwealth from eliciting any testimony regarding the witness protection program on the grounds that it would be prejudicial to Petitioner.  (TT 325.)  She argued that the jury could infer that the reason the witnesses were in the program was because of Petitioner.  Id.  The Commonwealth argued that the witness protection was a major part of the deal that the witness, Gerald Walls, received.  (TT 326.)   Judge Scarlata took the arguments under consideration. (TT 327.)  Later, Judge Scarlata ruled that he would allow the Commonwealth to explore the witness

protection program because he felt that it was necessary to explain the complete picture. (TT

375.)  However, the judge decided that he was going to give a cautionary instruction to the jury.

(TT 375.)  Petitioner's trial counsel agreed to a cautionary instruction. (TT 376.) After Walls

discussed the witness protection program, Judge Scarlata gave the following instruction:

> Ladies and gentleman, while we're on the subject matter it probably is an appropriate time to give you an instruction with regard to that, the Federal Witness Protection Program.
>
> As I'm sure you can ascertain from common sense given what this witness has testified to, there may be a multitude of persons who would have motive to harm him. That is why he is in the Witness Protection Program. Having sat through a day of testimony it becomes readily apparent that there are lots of people from whom he may need protection, and it's from those persons that he is being protected and not Mr. Prosdocimo. The reason you are told this is because it is part of a package or plea bargain that he negotiated on that aspect of the testimony.

(TT 445-446.)  Trial counsel did not move for a mistrial following this instruction.

Respondents argue that Judge Scarlata did not abuse his discretion in admitting this into

evidence and the curative instruction specifically negated any prejudicial effect. Trial counsel

cannot be found ineffective for failing to pursue a meritless issue.

Third, Petitioner alleges that the trial court should have granted a mistrial, because it

allowed Walls to testify as to the nature of the drug trade.  Petitioner argues that the statement

became more prejudicial with the impact of all of Gerald Walls' testimony.  In the alternative,

Petitioner argues that trial counsel was ineffective for failing to move for a mistrial.

During Walls' direct examination by the Commonwealth, he was asked if he trusted

people.  Walls responded as follows:

> You can't trust people in the business. It's a lucrative business and it's a very violent business, more so up north than down in Florida. We've had our wars in

south Miami—

(TT 337.)  Trial counsel objected and moved to strike. (TT 337.)  At sidebar, trial counsel argued

that the testimony was prejudicial. (TT 338.)  Judge Scarlata granted the motion to strike. (TT

339.)  Trial counsel did not move for a mistrial.

Respondents argue that a "passing reference" to criminal activity does not require a

mistrial. The Commonwealth did not intentionally elicit the remark. A curative instruction to the

jury was given promptly. An abuse of discretion cannot be found, if a curative instruction is

given promptly (TT 340).  The curative instruction negated any prejudicial effect.  Hence,

Petitioner's claim is meritless and trial counsel cannot be found ineffective for failing to pursue a

meritless claim.

On PCRA appeal on August 22, 2007, the Superior Court of Pennsylvania held as

follows:

> In sum, the court did not abuse its discretion by refusing to grant a mistrial
> and we perceive no ineffectiveness on the part of Attorney Fleisher in her
> handling of Walls's testimony. The record reveals that she was thorough and
> prompt in lodging objections, requesting argument at sidebar, and making motions
> for a mistrial as appropriate. Moreover, there is no indication that the
> Commonwealth purposefully elicited any of the challenged testimony or
> improperly used it against [Prosdocimo] later in the proceedings, and any
> prejudice that [Prosdocimo] perceives from Walls's testimony was immediately
> cured by the court's thorough cautionary instructions.

(Answer Ex. 54 at 31-32.)

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable

application of Strickland.  Therefore, as to this claim, the petition should be denied.

Evidentiary hearing

Petitioner also requests an evidentiary hearing.  The Court of Appeals recently

summarized the standards for holding an evidentiary hearing in a habeas case challenging a state

court conviction:

> "Prior to AEDPA, new evidentiary hearings [in habeas cases] were required in several circumstances." Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000) (citing Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)) (emphasis in original). We have been clear that "AEDPA, in contrast, permits evidentiary hearings on habeas review, but only in a limited number of circumstances." Id. (citing 28 U.S.C. § 2254(e)) (emphasis in original). In particular, a district court is permitted to hold an evidentiary hearing on a claim asserted in a § 2254 petition so long as such a hearing is not barred by 28 U.S.C. § 2254(e)(2). Under that section, a habeas court is barred from holding an evidentiary hearing unless the petitioner was diligent in his attempt to develop a factual basis for his claim in the state court proceedings, see Williams v. Taylor, 529 U.S. 420, 430, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); Wilson v. Beard, 426 F.3d 653, 665 (3d Cir. 2005), or the petitioner satisfies the criteria set forth in § 2254(e)(2)(A) and (B).

> "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." Schriro [ v. Landrigan], 550 U.S. [465,] 468 [(2007)]; see also Campbell, 209 F.3d at 287 ("AEDPA, unlike Townsend and [Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)], does not require that such a hearing be held. Instead, federal courts have discretion to grant a hearing or not."). Although such a decision is discretionary, it is not unconstrained, and Schriro identifies two related considerations that guide the habeas court's exercise of discretion.

> First, in determining whether or not to hold an evidentiary hearing, courts should "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro, 550 U.S. at 474. In other words, courts considering the appropriateness of an evidentiary hearing should determine whether the petition presents a prima facie showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim. See, e.g., Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008); Wells v. Petsock, 941 F.2d 253, 259 (3d Cir. 1991); Smith v. Freeman, 892 F.2d 331, 338 (3d Cir. 1989). The reasons underlying such a consideration are self-evident–given "AEDPA's acknowledged purpose of reducing delays in the execution of state and federal criminal sentences," Schriro, 550 U.S. at 475 (quotation marks, citations, and brackets omitted), a court should be reluctant to convene an evidentiary hearing to explore the claims of a petitioner whose pleadings are factually insufficient to suggest any entitlement to habeas

relief. See, e.g., Campbell, 515 F.3d at 184 ("bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing") (quoting Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987)); Anderson v. Att'y Gen. of Kansas, 425 F.3d 853, 858-59 (10th Cir. 2005) (to warrant an evidentiary hearing, a habeas petitioner's "factual allegations must be specific and particularized, not general or conclusory") (quotation marks and citation omitted).

Second, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. That is, even if the factual allegations in the habeas petition are sufficient to make out a prima facie claim for habeas relief, a district court may decline to convene an evidentiary hearing if the factual allegations are "contravened by the existing record." Id. (citation omitted); see also Campbell, 209 F.3d at 290. As the Supreme Court has explained, "[i]f district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts." Schriro, 550 U.S. at 475.

Palmer v. Hendricks, 592 F.3d 386, 392-93 (3d Cir. 2010) (footnotes omitted).

In this case, Petitioner was diligent in his attempt to develop a factual basis for his claims in state court, as he requested that a hearing be convened on his claims and he in fact obtained a hearing at which he, his trial counsel and other witnesses testified. See Palmer, 592 F.3d at 394 n.4. However, for the reasons explained above, he has not presented a prima facie showing which, if proven, would enable him to prevail on the merits. As in Palmer, many of Petitioner's claims allege ineffectiveness of trial counsel and, as in that case, Petitioner has failed to make a showing of prejudice. Therefore, a hearing would not serve any purpose and this Court should not exercise its discretion to hold one.

Certificate of Appealability

The decision whether to grant or deny a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893

(1983). If a certificate of appealability is granted, the Court of Appeals must consider the merits of the appeal. However, when the district court denies a certificate of appealability, the Court of Appeals can still grant one if it deems it appropriate. 28 U.S.C. § 2253. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This petition does not present a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

Therefore it is recommended that the Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed by Petitioner William Prosdocimo be denied and, because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Within the time specified in the Notice of Electronic Filing, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: November 29, 2010